Good morning. May it please the Court. Kara Hartzler, Federal Defenders, on behalf of Mr. Zitlalpopoca. Or at least that's how I pronounce it. After two remands from this Court, everyone agreed... I've seen this case before. A couple times, Your Honor. A couple of times. I thought so. Twice, in fact. Yeah. Okay. After two remands from this Court, everyone agreed that Mr. Zitlalpopoca's sentencing guidelines range was 27 to 33 months. But the District Court then varied up 14 years to impose a 200-month sentence, more than six times the high end of the guidelines range. In doing so, the District Court erred in three ways. It failed to justify the extent of this variance. It ignored the well-documented sentencing disparities this created that were documented below. And it was greater than necessary to satisfy the 3553A factors. So for these reasons, we believe that this Court should vacate the sentence and remand to a different judge. Your sentencing memorandum had... or objections to the sentencing memorandum set out a great deal of information in comparison with other cases, both published and unpublished, and what the sentences were for that. To what extent did the District Court mention or respond to that? I know the District Court said that it looked at all the papers. That's all it said, if that. I'm not even sure the District Court said that. The District Court never once addressed our sentencing memorandum. And I think that's one of our primary concerns here and one of our primary procedural errors, and we think that that also led to a substantive error. And, Your Honor, I would actually point to this Court's decision in Trujillo. And in Trujillo, there was a similar sentencing disparity argument made. And there, the District Court... I'm sorry, the defendant's attorney pointed to two cases that talked about ten defendants. And in that case, similarly, the District Court didn't address that sentencing memorandum at all. And what this Court said is that this total omission goes against the explicit policy considerations in RITA, where the Supreme Court explained that the sentencing judge should set forth enough to satisfy the appellate court that he has considered the party's arguments and has a reasoned basis for exercising his own legal decision-making authority. Here, we actually had a lot more cases. We cited 13 cases and a total of 38 defendants. And yet, the District Court did exactly what it did in Trujillo. It didn't mention it at all. So we think, Your Honor, at a minimum, Trujillo mandates vacating the sentence and reversing on procedural error. We also think that the District Court failed to justify the extent of this variance. We know, Your Honor, that it's difficult to say to District Court judges, well, you have to give more explanation and more explanation. And I want to stress that we're not asking this Court to come up with a hard and fast rule for all cases about what level of explanation needs to be given. All we're saying is that when there is a 14-year upward variance, which in my research appears unprecedented, there needs to be a better explanation than there was in this case. The last argument that I'll just touch on briefly, Your Honor, is that we believe that this is substantively unreasonable. Now, again, District Courts have a lot of discretion to give the sentence that they believe is appropriate. The problem here is that this is one of those exceptional cases where it's just so far out of the reach of norm. I mean, I've never seen a 14-year upward variance. I couldn't find any in my research. I think this is one of those cases that sort of shocks the conscience and requires this Court to take a really hard look at it. And if you take a really hard look at it, there's two reasons that it's substantively unreasonable. The first one is that essentially it didn't involve any of the really egregious factors that we look at, such as it didn't involve minors in the United States. It didn't involve any sort of involuntary servitude or bondage. There's no evidence in the law. You say it didn't involve minors in the United States, and I understand exactly why you said that, because by the time the women are in the United States, they're older. That's right. Is the judge forbidden to consider the origins of this, I don't know what to call it, the exchanges between your client and these two women? Because if we can look back in Mexico, we're not always talking about dealing with people who are not minors. That's right. One of the women started prostituting several months before she turned 18. So my question is, as to conviction, I get it. I mean, that's one of the reasons for the earlier remand. But as to sentencing, is the judge entitled to look at the entire course of conduct, some of which took place outside the United States? Your Honor, we wouldn't say that this Court is barred from looking at it because the 3553A factors are broad. They allow you to consider the history and characteristics. But I would point out that this was years before they came to the United States. This was at least three years before. You answered my question. He can look at it if he wants to. You can look at it. But we would say that it deserves probably less weight. And we would just say it deserves less weight than, for instance, the conduct that was more directly related to the offense charged in the indictment. So you were also challenging the supervised release condition, which basically adopted what the PSR had recommended. And because it wasn't challenged, your position would have to be that that was plain error. Do you want to explain why that was plain error to accept the PSR? It was plain error. And we agree, this is a plain error review. It was plain error because what happened is you can't accept a guidelines range. So I draw a distinction in my briefing saying essentially, look, if you have a situation where the PSR says, all right, the statutory guidelines range for this is zero to three years, then essentially that sets out the range. That's different. I'm sorry, that sets out the statutory range. That's different than the recommended guidelines range. Here, under 5D1.1c, the guidelines recommended range is zero, supervised release, because he's going to be deported. So the district court, in our opinion, can acknowledge that the PSR said this is the statutory range, but it can't adopt that as a recommended guidelines range because that's not what the recommended guidelines range is. The recommended guidelines range is zero supervised release. But so then it was going to be waived if he was deported. Is that right? And I suppose if he wasn't deported because of changing administrative policies or whatever reason, then it would kick in. So why is that erroneous? I'm sorry, I'm not quite sure I'm following your question. If he's not deported, then it wouldn't be waived. Right, so you would have the three-year supervised release condition. So why doesn't that make sense? I don't think there was any question here that he was going to be deported, and so I'm not sure there's any possible chance that that would happen, and that's why we believe it's not relevant. I think that's probably the best answer I have here to question you on it. Could you go back to the explanation of why you believe that this is substantively unreasonable? I believe you started talking about the egregious factors. Sure. It didn't involve those three seriously egregious factors. It didn't involve minors. It didn't involve involuntary servitude or serious physical injury that would require hospitalization. The other thing we would say, Your Honor, is that I think in terms of figuring out what is substantively reasonable, a good guide is the enhancements. And in this previous decision from this court, this court actually said that the enhancements don't apply. But let's say that the district court said, all right, even though they don't technically apply on their face, I think there was some egregious behavior. The level of upward variance still shouldn't go past what the enhancement would have applied. So, for instance, even if it's apples and oranges, the district court was talking about the organization behind the grooming. I guess I'm having a hard time following one set of factors that would clearly enhance if they were applicable, and they're not, and different factors that seem to capture the district court's level of concern, as he expressed. And so how do you say that we're somehow stuck with the enhancements and that some of these other factors shouldn't go above the enhancements? Or perhaps I'm missing your point when they seem different things. I think Your Honor is right. They are sometimes apples and oranges. But, for instance, I'll give an example. The district court relied a lot on the physical violence against the women. Well, if the district court, if an aggravated sexual abuse enhancement had applied, that would have only resulted in an enhancement that would have put a guidelines range at 63 to 78 months. So not only did this court say that that enhancement doesn't apply, but the district court went ahead and gave a sentence about three times higher than that. So, in other words, I'm just saying that in terms of the level, the extent of the upward variance, I think it's questionable whenever a district court goes above one or more of the enhancements that were not even found to apply. That's my point. And I don't have much time, but I'll save it for later. We'll hear from the government, but we will give you a chance to respond. Thank you, Your Honor. Good morning, Your Honors. May it please the Court, Mark Rahe for the United States. Your Honor, there was no procedural error in sentencing in this case. As this Court is well aware, district courts are basically at the height of their discretion in sentencing, particularly under the advisory guidance. Don't we have a rule that you've got to respond to arguments when you have a sentence that is so far outside the guidelines? The rule is that there has to be an explanation. And we specifically pointed out that's the CARDI rule. We put that in our briefing. I read every word spoken by the district judge at sentencing, and I didn't see anything that responded to the argument laid out in great detail as to the disparity between this sentence and other sentences for comparable crimes. I just didn't see any response to that argument. And that's correct, Your Honor. It's not there. So what do we do with that when I think we have a rule that if we've got an outside-the-guidelines sentence of this magnitude, there's supposed to be a response and an explanation by the judge? Well, first of all, I'm not aware that there's any hard and fast rule that every single reason has to be set forth. In fact, the Trujillo case, upon which my opponent relies, I reread that yesterday. That was a case that was a 3582 motion for reduction of sentence. The district court there did not have a hearing, decided it on the papers. It wasn't just about unwanted sentencing disparity. That defendant gave at least eight different 3553 factors. If you look through that opinion, what the court said, it was a total omission. It didn't respond to any of the 3553 factors. But even Trujillo itself says, a mechanical recitation of every factor in support of the sentence isn't required. What Rita said in the Supreme Court was, the district court needs to give the reviewing court enough reason to believe that it's considered the arguments. Those cases, those 10 or 13 cases, they were filed four days before the sentencing was supposed to happen. I think it's in the first three pages of our supplemental excerpts of record. The district court specifically said, I just got this paper. I'm going to put sentencing over for three weeks to consider it. So this court knows that the court definitely considered it. No, we don't. We know that he set aside three weeks, but we have nothing in what he said that gives us any indication that, in fact, he did consider it. Well, but Cardi itself, first of all, says, as long as the judge says it reviewed the papers, we take the judge at its word. But moreover, we would point out, I mean, every argument, they put 13 cases in. But didn't they say in Cardi that if a party raises a specific non-frivolous argument tethered to a relevant 3553A factor in support of a requested sentence, then the judge should normally explain why he accepts or rejects the party's position. And here we had an extremely detailed, well-documented argument as to why, under A6, there would be disparity with other sentences nationwide tethered to or any response to that. What do we do about this complete absence of any analysis? On this 13553 factor, you would do the following, Your Honor. First of all, this is to be reviewed under plain error. This court … Why is it plain error? The sentencing memorandum makes a specific argument tethered to a 3553A factor. Correct. Well, before sentencing, both parties tell the judge what they want. Then the judge has the sentencing here. It's raised to the district court, so there's no plain error here. Well, in all honesty, Your Honor, I mean, if a defendant … This is McVille. This is this court's precedent. A direct quote, if a defendant fails to object to the district court's failure to adequately state reasons, however, the sentence is reviewed for plain error. If there was … How hard would it have been? This defense counsel has at least 10 years of experience, could very well have said, Your Honor, appreciate. We've had 20 pages of heated discussion. What about my chart? What about my 13 cases? I read the sentencing transcript, as I think we all did. The plain error doctrine is designed to protect the district judge from being sandbagged. The district judge knew exactly what the argument was, and you're asking that your version of plain error rule requires defense counsel to twist the tiger's tail. I don't think that's required. Well, I cited a case, the United States v. Hofus. That's somewhere in my brief. H-O-F-U-S. That was where a defendant … Was anything in the sentencing memorandum in Hofus? This is where there was some general statement in Hofus, and then it was something specific that he complains about later on. That didn't seem to me to be on all fours with this case at all. Well, I mean, twice at the end of sentencing the court said, Is there anything else? Is there anything else we need to consider? I've seen myriad sentencing transcripts over the years, as has this court. That is the time when people, defense counsel, usually put their objections forward. But even if we review this as if it were preserved, the point remains, it is just one factor. A lot of these cases, I mean, some of them had to do with, you know, in order to have unwarranted sentencing disparity, I think, Your Honor, you're presuming a case that is least non-frivolous. I mean, there were plenty of cases cited in that chart. Attempted recruitment of an FBI informant when there was no prostitution whatsoever. Just a statement of a 33-defendant case where some defendants got 33 months, others got more per sentence per victim. How does that give any analysis for the district court to say, You know what? Boy, this is really a weighty argument of unwarranted disparity. I mean, here we have a defendant with two victims. This wasn't just one week of prostitution. It wasn't three months. One of them met the defendant when she was 17 and he was 11 years older than her. The other one met him when he was 18. Each of them prostituted for three or four years. Defendant used repeated acts of violence. All of these things are what the district court focused on. You can infer from this record, particularly where there's no, I mean, for the defense to say this was the single most important argument, they only mentioned it twice in sentencing, and even then they just say in conclusory fashion, I think there's unwarranted sentencing disparity. With that, we submit. If a district court is to have the kind of discretion that 3553 affords it, I think this record shows this is still plenty to fulfill that standard. I mean, again, in Marshall-Santiago, this court held, even if somebody proves unwarranted sentencing disparity, that's only one factor. Here, the court considered the characteristics of the offense, the history of the defendant. I think Judge Fletcher asked, there is zero limits to what the court could consider. 18 U.S.C. 3661 says, there shall be no limitation placed on the information a court is to consider in sentencing. In this court, this is what- You earlier said, as we were talking about plain error, that the district judge at the end twice said, is there anything else I should consider? I don't remember having seen that. I've just been skimming back through. Could you point out to me where he says this twice? Yes. The first is at Excerpt of Record 22. Third line from the top, the court says, so anything else? And this was after the prosecutor had made his presentation. And then Ms. Morgans, the defense counsel,  so she definitely takes that opportunity to specifically answer arguments in the prosecution. And there's zero mention about, hey, Your Honor, I've got this really great argument about disparity. And where's the other one? Excerpt of Record 28. Sorry, sorry. Excerpt of Record 28. 28? Yeah, and it's lines 13 through 14. The court says, is there anything else we need to address? And this is towards the end of sentencing. Again, this is usually where courts- And I've seen, I mean, if somebody says, Your Honor, I have a procedural objection. Counsel, what is it? I had a chart at ER 37 to 41. You never said a word, one, about it. Well, then, oh, yeah, you reminded me of something, so let me talk about it. I didn't think it was that important. I mean, this isn't putting a huge burden on the defense, Your Honor. Before your time runs, could you address the request of counsel for reassignment if we end up reversing and remanding? Absolutely. I think it should be denied, Your Honor. And, of course, as this court knows, in the original, you know, the rule is it takes extraordinary or unusual circumstances. This is not a case where the district judge has expressed hostility towards the defendant. In fact, the record has at least two examples of where the district court compliments the defense on their zealous advocacy. Wait a minute. You just differentiated between defendant and defense. Sorry. You said it did not express hostility to the defendant. Correct. It seems to me that the district judge did express some, I'll say it this way, fairly strongly worded disapproval of the conduct of the defendant. Absolutely. Now, expressing hostility, I'm not so sure, but don't slide back and forth between attitude toward the defendant and attitude toward defense counsel. Absolutely. I apologize, Your Honor. And even the defense admits that the defendant had reprehensible conduct. But this is really it. The defense wants to give the idea that this is the third time around. Of course, they can keep appealing endlessly. The first appeal was just about conviction. The second appeal was just about the guidelines. This third appeal was just about 3553. And here's the irony. If this judge is so intransigent and is so locked in its own views and not willing to listen to this court, why did the sentence go from 292 months to 262 months and now at 200 months? This isn't a judge that has shown himself to be completely, you know, outside the realm of learning about what apparently went wrong. And here we are. This is 3553 again. This is supposed to be where a judge has his greatest discretion. Thank you. If I don't put a minute back on the clock, please. Thank you, Your Honor. I'll just address the remand to a different judge briefly because I think the court has essentially asked some of the other questions that I would have asked government counsel myself. I think the reason that this needs to go to another judge is spelled out in Garden Hire. And in that case, essentially there was a situation where the district court sentenced someone and then the district court said, well, even if I'm wrong on that, on the guidelines, I would give this person the same sentence anyway. And what this court said in Garden Hire is we're going to take the district court at their word that they're not going to be able to look at this case with fresh eyes, that they are entrenched in this position. And essentially the district court did the same thing here. It's effectively said I'm not going to go any lower than 200 months. And that's why under the Arnett factors we believe that remand is required. Thank you, Your Honor. Thank you. Thank both sides for their arguments. The case of the United States v. I'm going to take a run at this. Zitlabopoca, Hernandez is submitted.
judges: W. Fletcher, Ikuta, Freudenthal